IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOYCE ANDERSON,

       Plaintiff,

v.                                   Civil Action No. 1:11CV138
                                               (STAMP)

CONSOLIDATION COAL COMPANY
and CONSOL ENERGY, INC.,

       Defendants.


**MEMORANDUM OPINION AND ORDER**
**CONFIRMING PRONOUNCED ORDER OF THE COURT**
**GRANTING PLAINTIFF'S MOTION TO FILE A SURREPLY**
**AND DENYING DEFENDANTS' MOTION TO DISMISS**

I.  Procedural History

      The plaintiff, Joyce Anderson, commenced this civil action by filing a complaint in the Circuit Court of Marion County, West Virginia. The plaintiff alleges that after recovering from a work-related injury, she sought to return to work but the original defendants, CONSOL Energy Incorporated ("CONSOL") and Consolidation Coal Company ("CCC"),[1] prohibited her from returning and thus terminated the plaintiff. The plaintiff asserts three claims arising from that termination. First, the plaintiff claims that the defendants terminated her and therefore retaliated against her as a result of their animus arising out of the plaintiff's filing of a workers' compensation claim or her future eligibility to file

_____

[1]After the defendants filed their second motion to dismiss, this Court, upon the parties' stipulation, dismissed CONSOL with prejudice. See ECF No. 56.

such a claim. Second, the plaintiff argues that her termination was also motivated by her gender, the perception that she had a disability, or her actual disability in violation of the West Virginia Human Rights Act ("WVHRA"). Lastly, the plaintiff argues that the defendants violated the WVHRA by relying on osteoporosis as a reason for terminating the plaintiff's employment, because such a practice has a disparate impact on women.

CONSOL and CCC later removed the action to this Court. The defendants then filed a motion to dismiss the plaintiff's complaint. The plaintiff responded in opposition to the defendants' motion to dismiss, but she also filed a motion for leave to amend the complaint. This Court granted the plaintiff's motion for leave to amend and denied the defendants' motions to dismiss without prejudice subject to refiling based upon the allegations and contents of the amended complaint. The amended complaint does not contain any additional claims. Instead, the amended complaint only includes additional factual allegations in support of the plaintiff's original claims.

Thereafter, the defendants refiled their motion to dismiss. In their motion to dismiss the plaintiff's complaint, the defendants argue: (1) the Federal Labor Management Relations Act preempts state law claims that require the interpretation of a collective bargaining agreement ("CBA"); (2) the plaintiff is collaterally estopped from re-litigating any factual issues decided

by the arbitrator; and (3) the plaintiff failed to name an indispensable party, in this situation the Union,[2] that prosecuted her grievance in arbitration.

The plaintiff filed a response arguing: (1) the plaintiff's claims are not preempted by federal law because they do not require the interpretation of a CBA; (2) the arbitrator's determination that the discharge did not violate the CBA is not dispositive of the plaintiff's right under West Virginia law; (3) the decision of the arbitrator does not collaterally estop the plaintiff from pursuing the claims in her complaint in a judicial forum; and (4) the Union is not an indispensable party.

The defendants then filed a reply wherein they argued: (1) the plaintiff's alleged facts and inferences are misleading and without the support necessary to withstand a motion to dismiss; (2) plaintiff's termination of employment cannot be separated from operation of the CBA, and the CBA must be interpreted in order to determine whether her rights were violated; (3) plaintiff's other arguments concerning the WVHRA are incorrect and further demonstrate her inability to state a claim; (4) the arbitrator's decision is entitled to collateral estoppel under the facts of this case; and (5) plaintiff's arguments are inconsistent with her position that the Union is not an indispensable party.

_____

[2]After a review of the record, this Court is unable to determine the exact name of the union of which the plaintiff was a member. Therefore, this Court will refer to it as the "Union."

Soon after receipt of the defendants' reply, the plaintiff filed a motion to file a surreply. In this motion, the plaintiff argues that the defendants introduced and relied upon a number of cases that were not addressed in either their initial motion or in the plaintiff's response. In fairness, the plaintiff believes that this Court should provide her with an opportunity to respond to the defendants' reply. The plaintiff attached the reply to her motion to file a surreply, wherein she argued that none of the newly cited cases support defendants' motion to dismiss.

The plaintiff then filed a motion requesting that this Court hold oral argument on the defendants' motion to dismiss. The plaintiff stated that she believed oral argument was necessary due to the complex and important issues in the law of discrimination and preemption that the motion to dismiss presents. This Court granted the plaintiff's motion, and thereafter held oral argument on defendants' motion to dismiss. Following the oral argument, this Court entered an order, upon stipulation of the parties, dismissing CONSOL as a party to this action. This Court then issued a letter setting forth its tentative findings as to the defendants' motion to dismiss and plaintiff's motion to file a surreply. The letter indicated that this Court denied defendants' motion to dismiss and granted the plaintiff's motion to file a surreply. This order confirms those rulings in more detail for the reasons set forth below.

II. <u>Facts</u>[3]

The plaintiff started her employment with CCC in 1981 as a coal miner. On November 3, 2009, the plaintiff fell and was injured while working. She fractured her pelvis and right forearm as a result of the fall. On March 24, 2010, the plaintiff allegedly notified CCC that she was ready to return to work. CCC's workers' compensation administrator, Wells Fargo, then scheduled an appointment for a doctor's evaluation in connection with the plaintiff's workers' compensation claim. The doctor who evaluated the plaintiff, Dr. Steinman, then issued his evaluation finding that the plaintiff had only sustained a 1% whole person impairment as a result of the fall, but her osteoporosis precluded her from returning to work.

The plaintiff then met with her treating orthopedist, Dr. McKinley, who disagreed with Dr. Steinman's evaluation. Dr. McKinley felt that the plaintiff was able to return to work and that there was no "evidence based data to reflect her risk to herself or others." ECF No. 38 *3. Two other doctors, the plaintiff's gynecologist and physical therapist, also released the plaintiff to return to work. The defendants, however, allegedly had another doctor review Dr. Steinman's report, and this doctor agreed with Dr. Steinman, finding that the plaintiff should not

---

[3]For the purposes of this opinion, this Court adopts, for the most part, the facts as set forth by the plaintiff in the amended complaint.

return to work. Based on this finding, along with Dr. Steinman's evaluation, CCC refused to allow the plaintiff to return to work because she suffered from osteoporosis. At the time of her termination, the plaintiff was 52 years old and had not yet reached the minimum retirement age of 55.

According to the plaintiff, under the CBA an employee cannot be terminated for medical reasons unless a majority of an employer-approved physician, an employee-approved physician, and a physician agreed to by the parties agree "that there has been a deterioration in physical condition which prevents the Employee from performing his regular work." ECF No. 38 *4 (citing the Article III(j) of the CBA). Therefore, another evaluation of the plaintiff was performed by Dr. Sethi, who was chosen as the third physician. He found, like Dr. Steinman, that the plaintiff should not return to work.

The plaintiff then filed a grievance requesting that CCC reinstate her as an employee despite the doctors' opinions. Her grievance proceeded to arbitration. Allegedly, the Union, on behalf of the plaintiff, challenged CCC's refusal to let the plaintiff return to work under West Virginia's workers' compensation laws. According to the plaintiff, however, the arbitrator denied the plaintiff's grievance based solely on the contractual provision from Article III(j) of the CBA, which is explained above. Supposedly the arbitrator stated that "[t]here is no language in the [CBA] which grants this Arbitrator or any

arbitrator the authority and jurisdiction to interpret and rule on matters of state worker's compensation law or other laws not addressed in the CBA." ECF No. 38 *5 (quoting the Arbitrator's Decision).

Prior to arbitration, CCC allegedly did not offer any alternative position to the plaintiff. After arbitration was completed, the plaintiff contacted CCC employees to inquire about possible positions with CCC in other areas besides coal mining. The contacts were unresponsive to her inquires. When the plaintiff applied for job openings in non-coal mining positions, CCC supposedly denied her employment.

### III. Applicable Law

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all well-pled facts contained in the complaint as true. Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc, 591 F.3d 250, 255 (4th Cir. 2009). However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." Id. (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). This Court also declines to consider "unwarranted inferences, unreasonable conclusions, or arguments." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009).

It has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356 (3d ed. 1998). The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. <u>Id.</u> For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). <u>Id.</u> § 1357.

A complaint should be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on is face.'" <u>Giarratano v. Johnson</u>, 521 F.3d 298, 302 (4th Cir. 2008) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Nemet Chevrolet</u>, 591 F.3d at 256 (quoting <u>Iqbal</u>, 129 S. Ct. at 1949). Detailed factual allegations are not required, but the facts alleged must be

sufficient "to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555.

IV. <u>Discussion</u>

A. <u>Motion for leave to file surreply</u>

The local rules of this Court state that a party should not file a surreply without first obtaining the permission of the court. L. R. Civ. P. 7.02(b)(4); <u>Thomas v. Branch Banking & Trust Co.</u>, 443 F. Supp. 2d 806, 809 n.2 (N.D. W. Va. 2006). Generally, a surreply is permitted when a party seeks to respond to new material that an opposing party has introduced for the first time in its reply brief. Schwarzer, Tashima, & Wagstaffe, <u>Federal Civil Procedure Before Trial</u> 12:110 (The Rutter Group 2008). <u>See also Khoury v. Meserve</u>, 268 F. Supp. 2d 600, 605 (D. Md. 2003) ("Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply."). If a court does not rely upon the new material raised in the opposing party's reply brief to reach its decision in a matter, then a surreply is superfluous and unnecessary. <u>See e.g.</u> <u>EEOC v. LA Weight Loss</u>, 509 F. Supp. 2d 527, 540 (D. Md. 2007) (denying the parties' motions to file surreplies because the court did not rely upon the new case law and evidence in making its decision); <u>First Penn-Pacific Life Ins. Co. v. Evans</u>, 162 F. Supp. 2d 423, 430 (D. Md. 2001) (denying plaintiff leave to file a surreply "[s]ince the Court will not be considering the

9

additional contentions advanced"). In those circumstances, a motion for leave to file a surreply should be denied.

Here, the plaintiff is specifically responding to new case law cited by the defendant for the first time in its reply brief. This Court does not find that the surreply is superfluous or unnecessary, as it provides the plaintiff an opportunity to address newly cited and relied upon case law that this Court may address below in its analysis of the defendant's motion to dismiss. Therefore, this Court grants the plaintiff's motion to file a surreply.

B.   Motion to dismiss

    1.   Preemption

The defendant first argues that federal law preempts the plaintiff's state law claims, which require the interpretation of a collective bargaining agreement. Therefore, CCC argues that because the plaintiff is not bringing a federal law claim, nor could she, her claims must be dismissed as preempted. The plaintiff responds by stating that her claims do not require the interpretation of the CBA. She argues that her right to be free from discrimination and retaliation under West Virginia law are independent of any right she may have under the CBA.

Section 301(a) of the Labor Management Relations Act ("LRMA") "mandate[s] resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and

thus to promote the peaceable, consistent resolution of labor-management disputes." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 404 (1988). The Supreme Court in Lingle stated "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted and federal labor-law principles . . . must be employed to resolve the dispute." Id. at 406. This does not mean, however, that the claims are preempted by federal law merely because the resolution of the claims either through arbitration under the CBA or through other means would involve addressing the same set of facts. Id. at 409. Instead, "as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes."

In Lingle, the Supreme Court found that the resolution of the plaintiff's state law claim did not require construing the applicable CBA. Id. at 407. The plaintiff made a claim under Illinois state law for retaliatory discharge based on filing a workers' compensation claim. Under Illinois law, to prove such claim, the plaintiff had to show that "(1) he was discharged or threatened with discharge and (2) the employer's motive in discharging or threatening to discharge him was to deter him from exercising his rights under the Act or to interfere with his exercise of those rights." Id. The Supreme Court found that

neither element required an interpretation of the applicable CBA. Id. at 407.

This Court starts by addressing the defendant's first argument as to why the plaintiff's claims are preempted. The defendant argues that the CBA establishes the procedure for the determination of a miner's fitness to return to work, and the plaintiff cannot present evidence contrary to the CBA's collectively bargained process. Namely, she cannot "engraft a wholly different process and set of obligations on the Defendants than the one which was collectively bargained." ECF No. 39 *10. The plaintiff in opposition argues that the fact that the CBA includes provisions that govern the plaintiff's return to work does not mean that those provisions preempt her rights under state law. Specifically, she argues that the defendant has failed to assert any provision of the CBA that requires interpretation to present her claims.

Merely because the CBA in this action provides for a process to determine whether the plaintiff may or may not return to work does not mean that her claims for retaliatory discharge or discrimination require the interpretation of the CBA. As stated above, in order for this Court to find that the plaintiff's state law claims are preempted by federal law, they must require the interpretation of the CBA. Lingle, 486 U.S. at 406. CCC stated that the plaintiff intends to mount a direct challenge to the process of determining whether an employee may return to work under

the CBA. Whether or not the plaintiff disagrees with the process afforded to her under the CBA, however, is irrelevant to the plaintiff's claims. As stated by the plaintiff, although the CBA "resolves disputes over an individual's return to work . . . it does not relieve defendants from their obligations under West Virginia law." ECF. No. 45 *20. CCC is certainly allowed to make the claim that it had just cause for terminating the plaintiff as her discharge was the result of it following the procedures under the CBA and was not the result of any bad motive. Such a defense, however, does not require that this Court interpret the CBA process in order to resolve the plaintiff's claims. As the Supreme Court in Lingle stated, "[i]n the typical case a state tribunal could resolve either a discriminatory or retaliatory discharge claim without interpreting the 'just cause' language of a collective-bargaining agreement." 486 U.S. at 413.

CCC's next argument in favor of preemption is that the plaintiff's termination was contractually mandated without regard to her status as an applicant for or former recipient of workers' compensation benefits and the plaintiff will have to prove that defendant's reliance on such procedures was a pretext for illegal discrimination. This, the defendant claims, brings the analysis of the CBA "squarely into focus." The plaintiff, in opposition, argues that her disparate impact claim and reasonable accommodation claim do not involve the proof of pretext. Regardless, the

13

plaintiff states that the defendant still fails to explain exactly which provisions of the CBA need to be interpreted.

Without delving into which of the plaintiff's claims requires the proof of pretext, this Court agrees with the plaintiff insomuch as she argues that the defendant has failed to indicate a provision of the CBA that requires this Court's interpretation in order to provide a resolution. The United States Court of Appeals for the Fourth Circuit in <u>Martin Marietta Corp. v. Maryland Comm'n on Human Relations</u>, found that the Maryland state law tort of retaliatory discharge creates rights independent of those provided under the applicable CBA. 38 F.3d 1392, 1402 (4th Cir. 1994). Further, the court specifically stated that while the defendant may have followed the terms of the CBAs in terminating the plaintiff, the defendant still may have used the terms as a pretext to engage in retaliatory discharge. <u>Id.</u> at 1403. This, as the court found, did not require any interpretation of the CBA, but was instead a purely factual inquiry. <u>Id.</u> Similarly, this Court finds that even if the plaintiff must prove pretext to establish her claims, it does not require an interpretation of any provision of the CBA. CCC seems to say that it requires interpretation of the process that CCC uses under the CBA to determine whether an employee may return to work. This Court, however, need not interpret such process in determining whether such process was used in a pretextual manner.

14

CCC next argues that an interpretation of the seniority and bidding provisions of the CBA is required in relation to plaintiff's reasonable accommodation claim in order to establish whether there was an available position to which she may have been transferred. The plaintiff argues that she has not requested relief that implicates any seniority or bidding provision because she is not arguing that she should have been offered any other position governed by the CBA. Therefore, the plaintiff states that because interpretation of those provisions is not required, the plaintiff's claims are not preempted.

This Court agrees with the plaintiff. In the plaintiff's complaint, she has not alleged that she is entitled to any position covered by the CBA as a reasonable accommodation. The plaintiff actually specifically states in her complaint in relation to her reasonable accommodation claim that "[f]ollowing the arbitration decision, defendant[] could have placed her in another position that did not involve underground coal mining and that was not subject to the [CBA]." ECF No. 38 *9.

In addressing whether a plaintiff's reasonable accommodation claim would require interpretation of the applicable CBA, the Sixth Circuit found that the defendant was only relying on the restrictive provisions in the CBA as a defense to why the plaintiff was not provided a reasonable accommodation. Paul v. Kaiser Foundation Health Plan of Ohio, 701 F.3d 514, 520-521 (6th Cir.

2012). Therefore, the court found that the plaintiff's state law reasonable accommodation claims were not preempted because reliance on a CBA term purely as a defense does not result in preemption. Id. at 521; see Humble v. Boeing Co., 305 F.3d 1004, 1011 (9th Cir. 2002) (finding that while a dispute may arise regarding what jobs a plaintiff was eligible for as a result of CBA seniority provisions, any necessary interpretation is "only potential and limited" and therefore the plaintiff's state law reasonable accommodation claim is not preempted).

This Court likewise finds that CCC is only relying on the seniority provisions as a defense or justification as to why it did or could not offer the plaintiff a reasonable accommodation. Therefore, this Court finds that the plaintiff's reasonable accommodation claim is not preempted based on the possibility of having to interpret the CBA as a result of the defendant's possible defense. Further, if the plaintiff is not claiming that CCC should have provided her with a reasonable accommodation in the form of another job governed by the CBA, the seniority provisions are irrelevant. As this Court reads the amended complaint, the plaintiff is specifically stating that CBA should have provided her with an accommodation in the form of a position not subject to the CBA. As such, this Court finds that the interpretation of the CBA is unlikely and preemption is therefore inappropriate.

2.  Collateral estoppel

The defendant next argues that the plaintiff is collaterally estopped from relitigating any issues decided by the arbitrator. Under West Virginia law, the following four conditions must be met in order for this Court to find that collateral estoppel applies:

> (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Syl. pt. 1, State v. Miller, 194 W. Va. 3, 459 S.E.2d 114 (1995).

The defendant asserts that all of the above cited requirements are met, and thus this Court should apply the principles of collateral estoppel to this case.[4]  The plaintiff argues in opposition that the decision of the arbitrator does not preclude the plaintiff from pursuing her state law claims and even so, she does not believe that at least two of the above requirements are met.  The plaintiff specifically argues that the first requirement, which is that the issue previously decided is identical to the issue presented in this action, is not met.  The defendant, asserts that at least the issue of whether the plaintiff was medically fit

---

[4]This Court notes that the defendant seems to be arguing that the plaintiff is barred only from relitigating the issue of whether the plaintiff was medically fit to return to work, as the defendant does not assert that any other issue was decided by the arbitrator.

to return to work, however, is identical to an issue presented in this case.

This Court finds that this argument is similar to that asserted by the defendant in Peters v. Rivers Edge Min., Inc., insomuch as it relates to the plaintiff's gender discrimination and workers' compensation retaliatory discharge claims. In Peters, the West Virginia Supreme Court found that collateral estoppel did not apply to an issue previously decided in arbitration. 680 S.E.2d 791, 809-810 (W. Va. 2009). The defendant in Peters, asserted that the issue of whether the defendant was justified when it fired plaintiff based upon his violation of a certain employee rule, which was the issue decided in arbitration, was the same issue to be decided by the trial court. Id. at 809. The West Virginia Supreme Court found that this issue was not the same as the issue decided by the trial court. Id. Instead, the court found that the issue was whether the defendant's asserted reliance on the violation was pretext for the discrimination that actually formed the basis for its decision to discharge the plaintiff. Id. Therefore, the court determined that because the issues were different, the requirement that the issues be identical was not met. Id. at 809-810.

Similarly, this Court finds that the issue in this case concerning whether the plaintiff was medically fit to return to work underground is not identical to any issue that will be

18

addressed in this case. Specifically, as to plaintiff's gender discrimination and workers' compensation retaliatory discharge claims, the issue to be decided is whether the medical findings were used as pretext for the plaintiff's termination, not whether the plaintiff was or was not medically fit to return to work.

This Court also finds that the plaintiff's disparate impact claim does not require the relitigation of whether the plaintiff was medically fit to return to work. Under the West Virginia Human Rights Act, in order to establish a prima facie case for disparate impact, "a plaintiff bears the burden of (1) demonstrating that the employer uses a particular employment practice or policy and (2) establishing that it causes a disparate impact on a class protected by the statute." West Virginia University/West Virginia Bd. of Regents v. Decker, 447 S.E.2d 259, 266 (W. Va. 1994). The employer then has the opportunity to prove "that the practice is 'job related' and 'consistent with business necessity.'" Id. The plaintiff may then rebut this evidence by showing that "a less burdensome, alternative practice exists which the employer refuses to adopt." Id. This Court finds that none of the elements of a disparate impact claim require the defendant to prove that the plaintiff was medically unfit to return to work. Therefore, no identical issue exists as to this claim, and collateral estoppel does not apply.

Further, plaintiff's disability discrimination claim also does not require the relitigation of the issue of whether the plaintiff was medically fit to return to work. As the plaintiff indicates, the defendant may have to prove that her disability posed a "direct threat . . . of injury to [her] health and safety." W. Va. Code St. R. 77-1-4.3. The defendant, however, must show that it made such determination "based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job." W. Va. Code St. R. 77-1-4.8. According to the state regulations, "[t]his assessment shall be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence." Id. The applicable CBA did not require such standards. Whether three doctors determined that the plaintiff was not medically fit to return to work as per the applicable CBA requirements is not the same issue as whether the plaintiff posed a direct threat to her health and safety as defined by the West Virginia Human Rights Act and its applicable rules. Therefore, any determination as to the plaintiff's fitness to return to work is inapplicable to the plaintiff's claim under the West Virginia Human Rights Act, as the particular issue to be decided is not identical. As such, because this Court finds that the plaintiff's claims do not require the

relitigation of any identical issue, this Court finds that collateral estoppel is not applicable to the current action.[5]

### 3. Indispensable party

The defendant's final argument is that the plaintiff failed to name an indispensable party, and therefore the complaint must be dismissed. The defendant specifically argues that the plaintiff was required to join the Union that prosecuted her grievance in arbitration. The plaintiff, however, argues that she is not required to join the Union and there is no case law to suggest otherwise.

In support of its argument, the defendant cites this Court's opinion in Hines v. N.W. Va. Operations, No. 1:08CV144, 2009 WL 192446 (N.D. W. Va. 2009). The pro se[6] plaintiff in Hines brought a suit against his employer for claims that included a discrimination claim and a claim that the arbitrator's decision included errors. 2009 WL 192446 at *1. The defendant attempted to argue that the Union, which prosecuted the plaintiff's grievance, was an indispensable party. Id. at *3. This Court, however, found that the Union was not an indispensable party and the

---

[5]As this Court finds that the issue of whether the plaintiff was medically unfit to return to work is not identical to any issue that the parties must address in this case, this Court need not address the plaintiff's further arguments in opposition to the defendant's assertion of collateral estoppel.

[6]"Pro se" describes a person who represents himself in a court proceeding without the assistance of a lawyer. Black's Law Dictionary 1341 (9th ed. 2009).

defendant had failed to show how complete relief could not be accorded among the parties in the absence of joinder. Id. at *4. This Court also cited and relied on cases wherein other courts made similar rulings in making its determination. Id. at *3 (citing Harris v. Chemical Leaman Tank Lines, Inc., 437 F.2d 167, 170 (5th Cir. 1977) ("The unions are not indispensable parties in a suit by an employee against the employer but may be sued separately for an alleged breach of duty.")); Diaz v. Schwerman Trucking Co., 709 F.2d 1371, 1375 (11th Cir. 1983) ("This action is . . . an action by the employees against their employer for back pay. In such a suit, the Union cannot be considered an indispensable party. For without joining the Union, the employees can nonetheless be accorded the relief they seek from [the employer], with no Union interest impaired, and without forcing [the employer] to face the risk of inconsistent obligations."); Holder v. Pet Bakery Div., I.C. Indus., Inc., 558 F. Supp. 287, 290 (N.D. Ga. 1982) ("Under these standards, the union need not be joined. The action involves a breach of contract, while a claim against the union involves breach of a statutory duty.")).

The defendant tries to distinguish Hines from this action by arguing that this case is different because this case is not based on allegations that the defendant violated the CBA. Instead, the defendant states that the plaintiff is arguing that the defendant's compliance with the CBA was discriminatory. First, while this

Court in <u>Hines</u> cited a case, wherein a court found that a union is not an indispensable party in an action by an employee against the employer when the claim is based on a violation of the terms of the CBA,[7] this was not this Court's finding based on the facts of <u>Hines</u>. Instead, this Court's actual finding was that the plaintiff could be afforded relief for those claims that the plaintiff made without impairing the Union's interest or forcing the employer to face inconsistent obligations based on the claims.

Further, this Court is unable to understand why such a distinction would allow this Court to find that the Union is an indispensable party. The defendant states that the "Union's role in the events leading up to the Plaintiff's discharge were pivotal, and its absence as a party subjects the Defendants to inconsistent obligations which cannot be reconciled." ECF No. 40 *24. This statement, however, is nothing more than a conclusory allegation without any supporting explanation. After a review of the plaintiff's claims for retaliatory discharge and discrimination, this Court finds that the plaintiff can be afforded relief without impairing the Union's interest or forcing the defendant to incur inconsistent obligations.

---

[7]<u>See</u> <u>Kaiser v. Local No. 83</u>, 577 F.2d 642, 644 (9th Cir. 1978).

## V. Conclusion

For the reasons set forth above, the defendants' motion to dismiss (ECF No. 39) is DENIED and the plaintiff's motion to file a surreply (ECF No. 50) is GRANTED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:   May 8, 2013

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE