IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOYCE ANDERSON,

      Plaintiff,

v.                                            Civil Action No. 1:11CV138
                                                           (STAMP)
CONSOLIDATION COAL COMPANY,
and CONSOL ENERGY, INC.,

      Defendants.


### MEMORANDUM OPINION AND ORDER
### GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
### GRANTING PLAINTIFF'S MOTION TO FILE SURREPLY AND
### DENYING ALL CURRENTLY PENDING MOTIONS IN LIMINE AND
### OTHER PENDING NON-DISPOSITIVE PRETRIAL MOTIONS AS MOOT

I.  Procedural History

The plaintiff, Joyce Anderson, commenced this civil action by filing a complaint in the Circuit Court of Marion County, West Virginia, alleging that defendant Consolidation Coal Company wrongfully terminated her employment as a coal miner with defendant.[1]  Specifically, the plaintiff alleges that after recovering from a work-related injury, she sought to return to work, but defendant's doctor who performed her physical examination prohibited her from returning.  The plaintiff contends that although her own doctors confirmed that she was able to return to work, the defendant refused to allow her to return because she suffered from osteoporosis.

---

[1]Consolidation Coal Company is the only remaining defendant in this action.  CONSOL Energy, Inc. was dismissed under a stipulation between the parties.  See ECF No. 56.

The plaintiff asserts three claims arising from her termination of employment. First, the plaintiff claims that the defendant terminated her employment in retaliation against her because of her filing of a workers' compensation claim or her future eligibility to file such a claim. Second, the plaintiff argues that her gender, the perception that she had a disability, or her actual disability in violation of the West Virginia Human Rights Act ("WVHRA") motivated her termination of employment. Finally, the plaintiff contends that the defendant violated the WVHRA by relying on osteoporosis as a reason for terminating the plaintiff's employment because such a practice has a disparate impact on women.

The defendant removed the action to this Court and filed a motion to dismiss the plaintiff's complaint. The plaintiff then filed a motion to amend her complaint in addition to responding to the defendant's motion to dismiss. This Court granted the plaintiff's motion to amend her complaint, and therefore, denied the defendant's motion to dismiss without prejudice to refiling after the plaintiff filed her amended complaint. The plaintiff's amended complaint contained no additional claims or parties, but instead only added additional factual allegations. After the plaintiff filed her amended complaint, the defendant then filed its motion to dismiss the amended complaint, where it argued that the Federal Labor Management Relations Act ("FLMRA") preempts state law

claims that require the interpretation of a collective bargaining agreement ("CBA"), in addition to other arguments. After the parties fully briefed the motion, this Court entered an order denying the defendant's motion to dismiss.

The defendant now moves for summary judgment. In its motion for summary judgment, the defendant provides three grounds for granting its motion. First, defendant argues that the plaintiff's retaliation and discrimination claims require interpreting the CBA and are therefore preempted by federal law. Second, the defendant argues that proof of the plaintiff's failure to accommodate claim also requires interpretation of the CBA and are thus also preempted by federal law. Finally, even if the plaintiff's claims are not preempted by the FLMRA, defendant argues that no genuine issue of material fact exists to support the plaintiff's claims because (1) the plaintiff's workers' compensation claim played no role in the defendant's decision to terminate employment, (2) the plaintiff cannot sustain her claims of WVHRA violations, and (3) no evidence exists to support plaintiff's claim for disparate impact or failure to provide a reasonable accommodation.

In response, the plaintiff first argues that none of the plaintiff's claims require interpretation of the CBA, and thus they are not preempted by federal law. Second, plaintiff argues that genuine issues of material fact exist concerning the plaintiff's workers' compensation, discrimination, or retaliation claims.

Third, the plaintiff asserts a claim for disability discrimination under the WVHRA. Finally, the plaintiff argues a nexus exists between her gender, her perceived disability, and her termination, thus demonstrating a violation of the WVHRA.

The defendant filed a reply in response to plaintiff's opposition stating that (1) plaintiff presented no facts to show that her workers' compensation claim was a "significant factor" in her discharge, (2) plaintiff presented no facts to show a discriminatory or retaliatory intent, and (3) by arguing that the defendant's request for additional evaluation and use of Article III(j) is discriminatory, the plaintiff inherently challenges the CBA, and such challenges are preempted by federal law.

The plaintiff filed a motion to file surreply and attached the proposed surreply. The plaintiff asserts that a surreply is necessary because the defendant's reply added a number of additional exhibits to the record and made new factual arguments that were not in its initial memorandum. The defendant responded in opposition to the motion to file a surreply, arguing that it neither raised new factual arguments that were not in its original memorandum nor made factual assertions contradicted by the evidence. Instead, the defendant asserts that it only addressed arguments raised by the plaintiff in her response.

For the reasons stated below, this Court grants the plaintiff's motion to file a surreply and grants the defendant's motion for summary judgment.

## II.  <u>Facts</u>[2]

The plaintiff began her employment with the defendant in 1981 as a coal miner.  At the time of the injury at issue, plaintiff was employed as a general inside bunker attendant, which involved monitoring an underground belt haulage system.  Several years before her injury, plaintiff was diagnosed with osteoporosis.  <u>See</u> ECF No. 208 Ex. 4.  On November 3, 2009, the plaintiff fell and was injured.  As a result of the fall, she fractured her pelvis and right forearm.  On March 24, 2010, the plaintiff allegedly notified the defendant that she was ready to return to work with her doctors' approval.  The defendant's workers' compensation administrator, Wells Fargo, then scheduled an appointment for a physician's evaluation in connection with the plaintiff's workers' compensation claim.  The physician who evaluated the plaintiff, Dr. Steinman, then issued his evaluation finding that the plaintiff had only sustained a 1% whole person impairment as a result of the fall, but her osteoporosis precluded her from returning to work.[3]

_____

[2]For the purposes of this opinion, this Court adopts, for the most part, the facts as set forth by the plaintiff in the amended complaint.

[3]Plaintiff contends that during her appointment with Dr. Steinman, Dr. Steinman had assured the plaintiff that she could return to work.

The plaintiff contends that this finding was a result of the defendant's concern for future workers' compensation claims and costs by the plaintiff.

The plaintiff then met with her treating orthopedist, Dr. McKinley, who disagreed with Dr. Steinman's evaluation. Dr. McKinley felt that the plaintiff was able to return to work and that no "evidence based data to reflect her risk to herself or others" existed. ECF No. 38 *3. Two other doctors, the plaintiff's gynecologist and physical therapist, also released the plaintiff to return to work. However, the defendant allegedly had another physician, Dr. Vincent Ripepi, review Dr. Steinman's report. Dr. Ripepi agreed with Dr. Steinman, finding that the plaintiff should not return to work. Based on this finding, along with Dr. Steinman's evaluation, the defendant refused to allow the plaintiff to return to work because she suffered from osteoporosis. At the time of her termination, the plaintiff was fifty-two years old and had not yet reached the minimum retirement age of fifty-five; thus, she was ineligible for retirement.

According to the plaintiff, under the CBA, an employee cannot be terminated for medical reasons unless a majority of the physicians selected agree "that there has been a deterioration in physical condition which prevents the Employee from performing his regular work." ECF No. 38 *4 (citing the Article III(j) of the

CBA).[4]  Under the CBA, the physicians used to determine this were composed of an employer-approved physician, an employee-approved physician, and a physician the parties both agreed to use.  After a physician selected by each party concluded differing opinions, the parties selected the "tie-breaking" physician under the CBA. After the parties submitted lists of physicians to provide the third opinion, Dr. Sushil Sethi was chosen and performed the evaluation.[5]  He found, like Dr. Steinman, that the plaintiff should not return to work.

The plaintiff then filed a grievance requesting that the defendant reinstate her as an employee despite the doctors'

---

[4]Specifically, Article III(j) under the CBA states:

[A]n Employee cannot be terminated or refused recall from a panel or recall from sick or injured status for medical reasons over his objection without the concurrence of a majority of a group composed of an Employer-approved physician, an Employee-approved physician, and a physician agreed to by the Employer and the Employee, that there has been a deterioration in physical condition which prevents the Employee from performing his regular work.

ECF No. 208 Ex. 19.

[5]Dr. Sethi was one of the doctors submitted by the defendant, not the plaintiff, to be the third doctor chosen by agreement.  The parties both submitted doctors to be considered to perform the third evaluation and after eliminations made by the parties, the names of the last remaining doctor on each of the parties' lists were put into a hat and the plaintiff chose the last doctor from the hat.  The plaintiff maintains that none of the doctors submitted by the defendant, including Dr. Sethi, were experts in osteoporosis, but instead, they were doctors that the defendant knew were likely to offer opinions supporting its position.

opinions. Her grievance proceeded to arbitration. Allegedly, the Union,[6] on behalf of the plaintiff, challenged the defendant's refusal to let the plaintiff return to work under West Virginia's workers' compensation laws. However, according to the plaintiff, the arbitrator denied the plaintiff's grievance based solely on the contractual provision from Article III(j) of the CBA, which is explained above. Supposedly, the arbitrator stated that "[t]here is no language in the [CBA] which grants this Arbitrator or any arbitrator the authority and jurisdiction to interpret and rule on matters of state worker's compensation law or other laws not addressed in the CBA." ECF No. 38 *5 (quoting the Arbitrator's Decision).

## III. Applicable Law

Under Rule 56(c) of the Federal Rules of Civil Procedure,

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of

---

[6]After a review of the record, this Court is unable to determine the exact name of the union of which the plaintiff was a member. Therefore, this Court will refer to it as the "Union."

material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23
(1986).  "The burden then shifts to the nonmoving party to come
forward with facts sufficient to create a triable issue of fact."
Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir.
1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).  However, as the
United States Supreme Court noted in Anderson, "Rule 56(e) itself
provides that a party opposing a properly supported motion for
summary judgment may not rest upon the mere allegations or denials
of his pleading, but . . . must set forth specific facts showing
that there is a genuine issue for trial."  Id. at 256.  "The
inquiry performed is the threshold inquiry of determining whether
there is the need for a trial -- whether, in other words, there are
any genuine factual issues that properly can be resolved only by a
finder of fact because they may reasonably be resolved in favor of
either party."  Id. at 250; see also Charbonnages de France v.
Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should
be granted only in those cases where it is perfectly clear that no
issue of fact is involved and inquiry into the facts is not
desirable to clarify the application of the law." (citing Stevens
v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

    In Celotex, the Supreme Court stated that "the plain language
of Rule 56(c) mandates the entry of summary judgment, after
adequate time for discovery and upon motion, against a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV. Discussion

### A. Motion to File a Surreply

This Court grants the plaintiff's leave to file a surreply to the defendant's reply regarding the pending motion for summary judgment. In support of her motion for leave to file a surreply, the plaintiff asserts that the defendant in its reply added a number of medical records and made new factual arguments. Specifically, the plaintiff argues that because she would not have a chance to address these alleged medical records and factual arguments without a surreply, the plaintiff requests leave to file a surreply. In response, the defendant argues that the plaintiff is simply attempting to have the last word, and asks this Court to deny the motion to file a surreply.

Under Local Rule of Civil Procedure 7.02(b)(3), parties shall not file surreplies without leave of court. See also Bordas v. ALPS Corp., 5:12CV126, 2013 WL 525642, at *2 (N.D. W. Va. Feb. 12, 2013); Thomas v. Branch Banking & Trust Co., 443 F. Supp. 2d 806,

809 n.2 (N.D. W. Va. 2006). A court can permit a surreply when a party seeks to respond to new material that an opposing party introduces for the first time in its reply brief. Schwarzer, Tashima, & Wagstaffe, Federal Civil Procedure Before Trial 12:110 (The Rutter Group 2008). See also Khoury v. Meserve, 268 F. Supp. 2d 600, 605 (D. Md. 2003) ("Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply."). If a court chooses not to rely on new material raised in the opposing party's reply to decide a matter, then the surreply is superfluous and unnecessary. See e.g. EEOC v. LA Weight Loss, 509 F. Supp. 2d 527, 540 (D. Md. 2007) (denying the parties' motions to file surreplies because the court did not rely on the new case law and evidence in making its decision); First Penn-Pacific Life Ins. Co. v. Evans, 162 F. Supp. 2d 423, 430 (D. Md. 2001) (denying plaintiff leave to file a surreply "[s]ince the Court will not be considering the additional contentions advanced"). In those circumstances, the court should deny a motion for leave to file a surreply should be denied.

In this case, the plaintiff's motion should be granted. The defendant's reply contains evidence and assertions that affects the plaintiff's disparate impact claim, among other claims. Specifically, the reply contains information about other patients receiving a similar process and treatment despite suffering from

disabilities other than osteoporosis. This, among other factual arguments and exhibits, provides new information and arguments this Court may consider in its decision of this opinion. Therefore, the plaintiff should have an opportunity to reply to defendant. Thus, this Court grants plaintiff's motion to file a surreply in response to defendant's reply.

B.    Motion for Summary Judgment

The defendant argues that this Court should grant summary judgment in its favor as to plaintiff's retaliation claim, discrimination claim, and disparate impact claim. Accordingly, this Court will discuss each claim in turn.[7] For the reasons stated below, this Court grants the defendant's motion for summary judgment for all claims.

1.    Workers' Compensation Retaliation Claim

In its motion for summary judgment, the defendant argues that the plaintiff's workers' compensation claim played no role in the defendant's decision to terminate employment. Thus, because the defendant did not consider the plaintiff's workers' compensation claim when terminating her employment, no discrimination or

---

[7]Regarding the preemption issue and arguments, this Court previously ruled on the defendant's preemption argument in its memorandum opinion and order denying defendant's motion to dismiss. There, this Court rejected defendant's preemption argument. In its motion for summary judgment, the defendant advances similar arguments regarding preemption and thus, this Court does not feel it needs to readdress such arguments in this opinion. For the arguments and order regarding the preemption issue, see ECF No. 19 and ECF No. 37.

retaliation for filing a claim occurred. In contrast, the plaintiff argues that genuine issues of material fact exist concerning the retaliation claim. Specifically, the plaintiff primarily argues that because the defendant is self-insured, items such as workers' compensation claims are paid through corporate funds. Accordingly, plaintiff argues that the fact that plaintiff filed a workers' compensation claim was a significant factor behind the defendant's motive to terminate her employment. The defendant's motive allegedly was to save money and thus served as motivation to terminate plaintiff's employment. Because of this, the plaintiff claims that a prima facie case exists and thus the motion should be denied.

Under West Virginia Code § 23-5A-1, "no employer shall discriminate in any manner against any of his present or former employees because of such present or former employee's receipt of or attempt to receive benefits." W. Va. Code § 23-5A-1 (2012). Further, to make a prima facie case of discrimination under this section, the employee must show that (1) the employee sustained an "on-the-job" injury, (2) the "proceedings were instituted under the Workers' Compensation Act," and (3) the employer treated the employee's filing of a workers' compensation claim as a "significant factor in the employer's decision" to discharge or discriminate against the employee. Syl. Pt. 1, <u>Powell v. Wyoming Cablevision, Inc.</u>, 403 S.E.2d 717 (W. Va. 1991); <u>see</u> <u>Bailey v.</u>

13

Mayflower Vehicles Systems, Inc., 624 S.E.2d 710, 713 (W. Va. 2005); Fravel v. Sole's Elec. Co., Inc., 624 S.E.2d 524 (W. Va. 2005)(per curiam); Skaggs v. E. Assoc'd Coal Corp., 569 S.E.2d 769 (W. Va. 2002).

Under the facts of this case, the plaintiff does not satisfy the requirements for a prima facie case of discrimination.  As the facts show, the plaintiff did suffer an "on the job" injury when she fell at her job site, satisfying the first requirement. Further, the plaintiff instituted proceedings under the Workers' Compensation Act, thus satisfying the second requirement.

Here, the issue becomes whether the employer treated plaintiff's filing of her workers' compensation claim as a "significant factor" in terminating her employment.  The defendant argues that the filing of a workers' compensation claim was not a factor in the plaintiff's termination of employment.  In support of this, the defendant points out that two out of the three doctors necessary under the CBA to determine the plaintiff's return to work status recommended she should not return to work.  In fact, one of the doctors, selected by both parties, recommended that she not return to work.  Thus, the defendant argues it followed the proper procedures under the CBA and did not consider the plaintiff's filing of a workers' compensation claim a significant factor.

However, the plaintiff claims that an inference exists that demonstrates the filing was a significant factor.  Specifically,

the plaintiff cites to <u>Powell v. Wyoming Cablevision, Inc.</u>, arguing that circumstances, such as "[p]roximity in time of the claim and the firing . . . [e]vidence of satisfactory work performance and supervisory evaluations before the accident . . . [and] evidence of an actual pattern of harassing conduct for submitting the [workers' compensation]" claim, can establish a prima facie case. 403 S.E.2d at 722. Because the defendant discharged her following her first attempt to return to work, the plaintiff argues a prima facie case has been established. Further, the plaintiff argues that the defendant, as a self-insured entity, must compensate every compensation amount from corporate funds. Thus, the plaintiff argues, because the defendant seeks to keep additional costs low, such as workers' compensation costs, plaintiff's filing of a claim had to be a significant factor behind her discharge.

However, under <u>Powell</u>, a prima facie case does not arise solely from circumstantial occurrences existing. Rather, circumstantial evidence can be used to demonstrate the nexus, but cannot itself demonstrate a prima facie case. <u>Id.</u> at 704, 721; <u>Nestor v. Bruce Hardwood Floors, L.P.</u>, 210 W. Va. 692, 696, 558 S.E.2d 691, 695 (2001). In <u>Powell</u>, the employee demonstrated the nexus between his discharge and filing a workers' compensation claim. The injured employee in <u>Powell</u> satisfied the third requirement through circumstantial evidence. <u>Id.</u> at 724. There, the plaintiff showed that his employer lied to him when the

employer claimed he discharged the plaintiff because (1) poor economic conditions existed and (2) the plaintiff was physically unable to perform the tasks of his job. Specifically, the employee showed that (1) the employer actually hired more employees, contradicting his "poor economic conditions" reason and (2) that doctors unanimously recommended he return to work but the employer refused, providing no reasons. <u>Id.</u>  Further, the employer and employee in <u>Powell</u> had no policy or procedure in place for handling such situations. <u>Id.</u>

In this civil action, plaintiff has failed to satisfy this nexus requirement to establish a prima facie case. Unlike the case in <u>Powell</u>, where the employee created an inference by showing the employer's reasons for discharge directly contradicted the employer's subsequent actions, the plaintiff here provides nothing that creates an inference. Further, unlike <u>Powell</u>, where no formal policy existed for handling employee discharge, here the defendant acted under the CBA which governed the procedure between them. Here, in compliance with the CBA, the defendant requested the plaintiff receive a physical examination prior to returning to work. ECF No. 208 Ex. 19. Complying with the CBA, a majority of the necessary medical opinions found that the plaintiff should not return to work. Further, a neutral arbitrator already found no fault in the medical opinions and upheld the doctors' recommendations. Simply put, no evidence exists to demonstrate or

imply that the defendant terminated the plaintiff with compensation

costs serving as a "significant" factor.  Because no facts exist to

show a prima facie case for workers' compensation discrimination,

the defendant's motion for summary judgment is granted regarding

this claim.

### 2.   West Virginia Human Rights Discrimination Claim[8]

As its second claim for granting summary judgment, the

defendant argues that the plaintiff cannot satisfy her WHRA

discrimination claim.  First, the defendant argues that the

plaintiff fails to qualify as a member of a protected class to

which the WVHRA applies.  Second, the defendant argues that a nexus

between the plaintiff's termination of employment and her gender or

disability neither exists nor has been demonstrated by plaintiff.

Finally, defendant argues that even if the WVHRA applies and a

nexus exists, safety concerns serve as a justifiable and legitimate

nondiscriminatory purpose for termination of employment.

In response, the plaintiff argues that her gender, the

perception that she had a disability, or her actual disability in

violation of the WVHRA motivated her termination of employment.

Specifically, the plaintiff first argues that she is a member of a

protected class, here those with disabilities, under the WVHRA.

---

[8]Initially, the plaintiff asserted a failure to accommodate
claim.  However, the plaintiff has since withdrawn this claim.
Thus, the claim will not be addressed in this opinion.  See ECF No.
253 at n.1.

Second, the plaintiff argues that the burden remains on the defendant to demonstrate that the plaintiff's disability presented a direct threat to her health and safety. The plaintiff then asserts that the defendant failed to satisfy its burden. The plaintiff claims that because the defendant used only physicians, rather than osteoporosis specialists, the medical recommendations lacked credibility and thus failed to show the direct threat of the disability. Finally, the plaintiff argues that a nexus exists because (1) defendant's policies discriminate against women, who suffer osteoporosis more often then men and (2) the defendant uses physicians that are not specialized in osteoporosis to make recommendations.

Under the WVHRA, it is unlawful for an employer to discriminate against an individual regarding "compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required, even if such individual is blind or disabled." W. Va. Code § 5-11-9 (2012). Further, "discrimination" means "to exclude from, or fail or refuse to extend to, a person equal opportunities because of race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status and includes to separate or segregate." Id. § 5-11-3(h).

To prove a prima facie case of employment discrimination under the WVHRA, the plaintiff must show that "(1) the plaintiff is a

member of a protected class," (2) the employer "made an adverse decision against plaintiff," and (3) but for the plaintiff's protected status, the employer would not have made the adverse decision. Syl. Pt. 3, Conaway v. E. Assoc'd Coal Corp., 358 S.E.2d 423 (W. Va. 1986); see Smith v. Sears, Roebuck & Co., 516 S.E.2d 275 (W. Va. 1999; Barefoot v. Sundale Nursing Home, 457 S.E.2d 152, 161 (W. Va. 1995); McCauley v. Merrimac, Inc., 460 S.E.2d 484 (W. Va. 1995)(per curiam). In proving the third requirement, the plaintiff must show evidence that would "sufficiently link" the plaintiff's protected member status and the employer's decision to infer the employer used discriminatory criteria. Conaway, 358 S.E.2d at 429-430 (footnotes omitted); Smith, 516 S.E.2d at 279. This could include an (1) employer's admission, (2) eliminating an apparently legitimate reason for the decision in showing unequal or disparate treatment between protected class members and others, or (3) "using statistics in a large operation" to show that protected class members received "substantially worse" treatment. Conaway, 358 S.E.2d at 429-30 (footnotes omitted).

If the plaintiff satisfies her burden, then the defendant must offer a legitimate, nondiscriminatory reason for the employment decision. Barefoot, 457 S.E.2d 152, 160. After the defendant presents its reasons, the plaintiff may then demonstrate that either (1) the defendant treated "age, gender, or ancestry" as a determinative factor in its employment decision or (2) the

19

defendant's rationale serves as merely a pretext for discrimination. Id. To show pretext, a plaintiff must show direct or circumstantial evidence of falsity or discrimination. Id.

In this case, the plaintiff satisfies the first requirement because she is a member of a protected class of disabled individuals under the WVHRA. The WVHRA defines "disability" as

> (1) A mental or physical impairment which substantially limits one or more of such person's major life activities. The term "major life activities" includes functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working;
> (2) A record of such impairment; or
> (3) Being regarded as having such an impairment.

W. Va. Code § 5-11-3(m) (2012). Here, the facts show that a majority of the doctors that provided opinions under the CBA indicated that the plaintiff should not return to work. The fact that she was strongly advised not to return to her work because of her osteoporosis shows that her osteoporosis "substantially limited" her ability to work, which is a "major life activity." Therefore, plaintiff satisfies the first requirement.

Further, plaintiff satisfies the second requirement, which requires that the plaintiff show the employer made an adverse decision against the plaintiff. Here, that decision was not permitting the plaintiff to return to work and thus terminating her employment.

Although the first two requirements are satisfied, the plaintiff fails to satisfy the final requirement. Plaintiff here

must provide evidence that creates at least an inference that the employer terminated her employment based on illegal discriminatory criteria, here either gender or disability. In this case, plaintiff provides insufficient evidence to link the defendant's decision to terminate plaintiff's employment to such criteria.

The defendant was aware that the plaintiff suffered from osteoporosis. However, the defendant did not base the decision to terminate the plaintiff solely on the grounds that she was disabled or that she was a woman. Rather, in compliance with the CBA, the defendant and plaintiff received three medical opinions regarding the plaintiff's ability to return to work. Of those three opinions, two of the opinions advised the parties that the plaintiff should not return to work. Relying on these medical opinions, and not simply the plaintiff's status as "disabled" or her gender, the defendant terminated her employment.

Plaintiff attempts to argue that the medical opinions used and the process of the examinations of the plaintiff were suspicious. Specifically, the plaintiff claims that the doctors used for the medical opinions and decision process were not osteoporosis specialists. Further, the plaintiff claims that the doctors used were "company doctors," or those selected to provided favorable opinions for the defendant. See ECF No. 253 *29.

However, insufficient evidence has been offered to support these claims, and they are speculation at best. Further, the

speciality-level of the doctors in this case is not a germane issue to the law at issue here. The facts show that the defendant acted under an honest belief regarding whether to discharge the plaintiff, basing the decision on the recommendations by licensed physicians with experience, though technically not specialities, in osteoporosis. Both parties together selected the third physician, meaning that the plaintiff herself agreed to be examined by this physician. More importantly, the terms of the CBA do not require the evaluating doctors be specialists in their field. Thus, the argument that the evaluating doctors did not practice in any medical speciality or possess any particular certification relating to osteoporosis is not relevant in this civil action, as such was not required under the CBA.

Even if the plaintiff proved a prima facie case existed, the defendant maintained a legitimate and nondiscriminatory reason. Here, the defendant offered the following legitimate and nondiscriminatory reasons for discharging plaintiff: (1) the process required under the CBA concluded that plaintiff should not return to work; (2) a majority of the necessary medical opinions, including a physician that both parties agreed to use, strongly recommended the plaintiff not return to work; and (3) based on the opinions of the physicians, her disability posed too great a risk to herself and those in the workplace. As West Virginia law provides, the reason provided "need not be one which the judge or

jury would have acted upon. The reason can be any other reason except that the plaintiff was a member of a protected class." Conaway, 358 S.E.2d at 430. Therefore, the reason must simply be nondiscriminatory and legitimate. Here, the defendant's reasons satisfy this standard.

Further, the plaintiff offers little evidence to prove pretext, which she must do once the defendant offers a legitimate, nondiscriminatory reason. In the plaintiff's response, the plaintiff argues that (1) defendant is self-insured, meaning it acted discriminatory in an effort to save money and in the process generally by manipulating it through self-interest and (2) that focusing on workers' compensation costs serves as a pretext for the discrimination. However, this argument fails to satisfy the standard to show pretext, which requires creating an inference through either direct or indirect evidence of falsity or discrimination. Barefoot, 457 S.E.2d at 160. Focusing on costs does not itself demonstrate a discriminatory nexus regarding gender or disability. Further, plaintiff failed to provide sufficient evidence that costs were a determinative factor. Therefore, the third requirement for a prima facie case remains unsatisfied. Thus, the defendant's motion for summary judgment is granted regarding the WVHRA claim.

3.   <u>WVHRA Disparate Impact Claim</u>

Finally, plaintiff argues that the defendant's policies have a disparate impact on women.  Specifically, the plaintiff claims that because (1) the defendant requires employees to see doctors who are not specialists in osteoporosis when returning to work with osteoporosis-related injuries and (2) osteoporosis generally affects more women than men, defendant's practices disparately impact persons with such disability or gender.

In response, defendant argues that although more women then men have osteoporosis, that occurrence itself does not prove a disparate impact against women.  Further, the defendant argues that seeking medical exams regarding ailments or disabilities from work is a standard process used on all employees when the situation arises.  More importantly, it is a process defendant uses for more than just osteoporosis cases.  <u>See</u> ECF No. 274 Ex. 16 *19.  Thus, because the process is used on all injured employees and the process does not target or disparately impact women, the defendant argues this Court should grant its motion for summary judgment.

Under the WVHRA, a plaintiff who cannot prove intentional discrimination can instead attempt to use a disparate impact theory.  A disparate impact occurs when "employers do not deliberately discriminate, but their hiring practices have the <u>effect</u> of disproportionately excluding persons on the basis of race, age, and so forth."  <u>West Virginia Univ. v. Decker</u>, 447

S.E.2d 259, 265 (W. Va. 1994) (quoting <u>Guyan Valley Hospital, Inc.</u>
<u>v. W. Va. Human Rights Comm'n</u>, 382 S.E.2d 88, 90 (1989)).   In
proving a prima facie case, the plaintiff must show (1) the
employer used a particular employment practice or policy and (2)
that the practice caused a disparate impact on a protected class
under the statute.   <u>West Virginia Univ.</u>, 447 S.E.2d at 266.   If the
employee satisfies this burden, then the employer must demonstrate
that the practice is "job related and consistent with business
necessity."   <u>Id.</u>   If this occurs, then the employee may rebut by
showing an alternative, less burdensome practice exists that the
employer refused to adopt.   <u>Id.</u>

     The facts of this case show no disparate impact on any
protected class.   Insufficient evidence has been presented to
satisfy all of the requirements.   First, under the CBA, the
defendant regularly has men and women, often facing disabilities or
injuries other than osteoporosis, undergo physical exams and other
medical exams before returning to work.   ECF No. 276 Ex. 16.   This
practice is applied regardless of particular disabilities or
genders.   Thus, the defendant does have a regular practice under
the CBA, meaning the first requirement is satisfied.   However, the
second requirement remains unsatisfied.   As mentioned above,
insufficient evidence has been provided to demonstrate that the
defendant's practice or policy has disparately impacted a protected
class, here gender or those that are disabled.   Although more women

than men suffer from osteoporosis, and in theory that could mean more women than men in the osteoporosis context could have their employment terminated, no evidence has been presented to prove that this actually occurred. Moreover, the defendant has shown that the process used for the plaintiff's case applied to employees outside the osteoporosis or female setting. It should be noted that in plaintiff's response, the plaintiff discusses another injured osteoporosis employee that the defendant approved to return to work under the CBA's process when a majority of the doctors recommended the employee should return to work.[9] ECF No. 253 *38-39. Further, defendant provided additional cases of individuals, both men and women who had disabilities other than osteoporosis, that experienced the same processes and procedures as the plaintiff under the CBA. In those cases, the results were mixed regarding whether the employees could return to work, showing no disparate impact or treatment towards any potentially protected class. ECF No. 273 *19-21. This further demonstrates that women generally or women with osteoporosis did not face termination of employment when injured in a way that disparately impacted only them. Insufficient evidence has been provided to show a disparate impact existed. Therefore, because the requirements for a prima facie case remain

_____

[9]Ultimately, that employee was discharged, but only after she experienced another osteoporosis related injury and a majority of the physicians recommended she not return to work. See ECF No. 253 *38-39.

26

unsatisfied, this Court grants the defendant's motion for summary judgment on the disparate impact claim.

## V. <u>Conclusion</u>

For the reasons stated above, the defendant's motion for summary judgment (ECF No. 207) is hereby GRANTED. Further, because this Court read and considered the plaintiff's surreply in conjunction with the motion for summary judgment, the plaintiff's motion to file a surreply (ECF No. 275) is GRANTED and the Clerk is DIRECTED to file the surreply. All currently pending motions in limine (ECF Nos. 211, 212, 213, 278, 280, and 282) and other pending non-dispositive pretrial motions (ECF Nos. 209, 210, 314, and 315) are hereby DENIED AS MOOT.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    September 5, 2014


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE